IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02269-LTB-BNB

DOUGLAS A. GLASER,

    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, COLORADO,
MITCH MORRISSEY, Denver District Attorney, individually and in his official capacity acting
    under color of law,
JOE MORALES, Deputy District Attorney, individually and in his official capacity acting under
    color of law,
KENNETH LAFF, Assistant District Attorney, individually and in his official capacity acting
    under color of law,
DAVID KARPEL, Assistant District Attorney, individually and in his official capacity acting
    under color of law,
RHEA BABCOCK, Colorado Division of Securities Investigator, individually and in her official
    capacity acting under color of law,
JOE JOYCE, Social Security Administration Agent, individually and in his official capacity
    acting under color of law, .
MATT MCQUEEN, Secret Service Agent, individually and in his official capacity acting under
    color of law,
ALFREDO YBARRA, Denver Police Detective, individually and in his official capacity acting
    under color of law,
ROBERT ROCK, Denver Police Officer, individually and in his official capacity acting under
    color of law,
MARK DALVIT, Denver Police Officer, individually and in his official capacity acting under
    color of law,
ROBERT FREUND, Denver Police Detective, individually and in his official capacity acting
    under color of law,
KELLY OHU, Denver Police Officer, individually and in his official capacity acting under color
    of law,
SHARON HUGHES, Denver Police Officer, individually and in his official capacity acting
    under color of law,
BRIAN CRAME, Denver Police Officer, individually and in his official capacity acting under
    color of law,
MIKE SCHWARTZ, Denver Police Officer, individually and in his official capacity acting
    under color of law,
MARK BEVERIDGE, Denver Police Officer, individually and in his official capacity acting
    under color of law,

JOSHUA VALERIO, Denver Police Officer, individually and in his official capacity acting under color of law,
TROY EDWARDS, Denver Police Officer, individually and in his official capacity acting under color of law,
CARRIE MAESTAS, Denver Police Officer, individually and in his official capacity acting under color of law,
RUBEN ROJAS, Denver Police Officer, individually and in his official capacity acting under color of law,
DAVID IVERSON, Denver Police Officer, individually and in his official capacity acting under color of law,
ERIK REIDMULLER, Denver Police Officer, individually and in his official capacity acting under color of law,
MATTHEW GRIMSLEY, Denver Police Officer, individually and in his official capacity acting under color of law,
MARK SCHONK, Denver Police Officer, individually and in his official capacity acting under color of law,
MATTHEW CHURCH, Denver Police Officer, individually and in his official capacity acting under color of law,
DAVID SMITH, Denver Police Officer, individually and in his official capacity acting under color of law,
KEVIN FRAZER, Denver Police Officer, individually and in his official capacity acting under color of law,
BRIAN GORDON, Denver Police Officer, individually and in his official capacity acting under color of law,
MICHAEL MARTINEZ, Denver District Court Judge, individually and in his official capacity acting under color of law,
UNKNOWN DENVER DISTRICT COURT CLERK, Denver District Court Clerk, individually and in their official capacity acting under color of law,
RAY WILLIS MANNON, individually and d/b/a Jostee Bail Bonds, LLC, and
UNKNOWN AGENT, Accredited Insurance, individually and in their official capacity as insurance provider for Jostee Bail Bonds, LLC.,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

This matter arises on **Defendant Babcock's Motion to Dismiss or Abstain** [Doc. #81, filed 2/18/09] (the "Motion"). I respectfully RECOMMEND that the Motion be GRANTED.

## I. STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings. Haines v. Kerner, 404 U.S. 519, 520-21 (1972). Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff. City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976). The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief. Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under

> Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II. BACKGROUND

The plaintiff filed his Complaint on October 20, 2008. He asserts 10 claims against 33 defendants. The plaintiff describes the background facts of his case as follows:

1. The plaintiff was the victim of a hit and run traffic accident on February 20, 2005. The responding Denver police officer stated that the plaintiff presented him with a United States passport in the name of Michael Douglas Glaser. The officer further stated that when he entered the name in his computer, he did not receive a return on his query. He then entered the plaintiff's license plate number. Later that night, the plaintiff's residence was raided by approximately 15 Denver police officers. *Complaint*, p. 12, first full paragraph.

2. On February 24, 2005, the plaintiff's office was raided by various government agents. The agents had a search warrant for the fictitious passport. Id. at second full paragraph.

3. On September 1, 2005, the plaintiff was arrested pursuant to a 43 count indictment and held in the Denver County Jail under a $750,000 bond. The plaintiff posted the required bond and was released from custody on October 16, 2005. At his next scheduled court

appearance on October 29, 2005, the plaintiff was remanded back into custody until he surrendered the fictitious passport. Id. at third full paragraph.

4. The Denver District Court placed liens on the plaintiff's property, which clouded title and blocked the sale of his residence so that he could not utilize his equity to secure private counsel. Id. at fourth full paragraph.

5. The plaintiff was held in the Denver County Jail for 905 days before his case was dismissed by the Denver District Court. Id. at fifth full paragraph.

6. While the plaintiff was in jail, he lost all of his assets and was denied bail. Id. at sixth full paragraph.

7. The government agents fabricated evidence and misstated material facts to judges in order to secure search warrants and imprison the plaintiff. All of the defendants acted in concert to deprive the plaintiff of his constitutional rights. Id. at seventh full paragraph.

At all times pertinent to the allegations of the Complaint, defendant Babcock was an investigator for the Colorado Division of Securities. Id. at p. 1. Claims One, Two, Four, Five, Six, Seven, Eight, Nine, and Ten are asserted against her. The plaintiff's claims are not clearly stated, and they are often redundant of one another. I summarize the claims against defendant Babcock as follows:[1]

[1]To the extent the plaintiff attempts to bring other claims, they are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

In Claim One, the plaintiff alleges that on or about February 24, 2005, the defendant violated his constitutional rights by knowingly fabricating evidence to establish probable cause for search warrants. Id. at p. 15, ¶ 12.

Claim Two alleges that on or about February 20, 2005, and from September 28, 2005, through September 10, 2007, the defendant violated the plaintiff's constitutional rights by fabricating evidence for the purpose of establishing probable cause "to illegally procure evidence and further an investigation through the statutory Denver Grand Jury." Id. at p. 23, ¶ 15.

Claim Four alleges that defendant Babcock "assisted the other defendants with the placement of spurious liens on Plaintiff's property to deprive him of the use of the property and/or its equity." Id. at p. 28, ¶16.

The caption of Claim Five lists the following state law causes of action: malicious prosecution, vindictive prosecution, abuse of process, false arrest, and false imprisonment. Id. at p. 29. However, Claim Five alleges that defendant Babcock "violated Plaintiff's constitutional rights by assisting and supervising illegal imprisonment, unconstitutional searches of Plaintiff's residence and office, continued confinement and committing perjury to the grand jury. . . . These egregious acts violated Plaintiff's rights secured by the U.S. Constitution." Id. at p. 31, ¶ 13.

Claim Six alleges that in violation of 42 U.S.C. §§ 1985(3) and 1986, defendant Babcock acted in concert with the other defendants to cause the plaintiff's arrest, prosecution, and pre-trial detention. Further, Babcock conspired to withhold exculpatory evidence and imprison the plaintiff with fabricated evidence. Finally, she provided false testimony to the grand jury. Id. at p. 38, ¶ 7.

In Claim Seven, the plaintiff alleges that defendant Babcock "utilized the local media and her position of authority at the Colorado Division of Securities to disseminate false information to brokerage firms, investors, and public companies to defame Plaintiff's character and slander his name." Id. at p. 47, ¶ 8. He further alleges that Babcock "visited many local dining establishments where Plaintiff frequented, financial institutions where he conducted his business, and former friends and business associates to slander his name and defame his character." Id.

Claim Eight alleges that defendant Babcock committed the state tort of intentional infliction of emotional distress "by illegally imprisoning and attempting to prosecute Plaintiff with fabricated evidence, perjured testimony, continued confinement with fabricated evidence, prosecution of charges in violation of double jeopardy, statute of limitations and jurisdiction" and "intentionally contacting business associates and friends of the Plaintiff, spreading malicious and vindictive lies in attempt to destroy Plaintiff's business and reputation." Id. at p. 50, ¶ 10.

Claim Nine allege that defendant Babcock violated the plaintiff's constitutional rights "by committing perjury to the grand jury and misrepresenting material facts to the Denver District Court." Id. at p. 56, ¶ 20.

Claim Ten alleges that the defendants illegally imprisoned the plaintiff in violation of 18 U.S.C. §§ 241, 1622, and 1623. Id. at pp. 57-58.

The plaintiff seeks declaratory and injunctive relief; nominal damages; compensatory damages in the amount of $119,638,135.00; punitive damages; a formal apology; vacation of an earlier state conviction; costs and attorneys' fees; and appointment of a special prosecutor to investigate all of the defendants. Id. at pp. 58-59.

## III. ANALYSIS

### A. Claim Ten

Claim Ten is asserted against all of the named defendants. Claim Ten alleges that the defendants illegally imprisoned the plaintiff in violation of 18 U.S.C. §§ 241, 1622, and 1623. Id. at pp. 57-58. The defendant seeks dismissal of Claim Ten for failure to state a claim upon which relief can be granted. *Motion*, pp. 11-12.

The federal criminal statutes do not create private civil causes of action. Kelly v. Rockefeller, 69 Fed.Appx. 414, 415-16, 2003 WL 21386338, at *2 (10th Cir. June 17, 2003). The Motion should be granted insofar as it seeks dismissal of Claim Ten as to all named defendants.

### B. State Law Tort Claims

Babcock asserts that the plaintiff's tort claims are barred by the Colorado Governmental Immunity Act (the "CGIA") because the plaintiff did not file notice of his claims as required by section 24-10-109(1), C.R.S. Babcock is asserting a factual challenge to the court's subject matter jurisdiction. Therefore, I do not presume the truthfulness of the Complaint's factual allegations, and I may consider affidavits and other documents to resolve disputed jurisdictional facts. Holt, 46 F.3d at 1003.

In addition, determination of the notice issue does not touch on the merits of the case. See Cizek v. United States, 953 F.2d 1232, 1233 (10th Cir. 1992) (holding that the question of whether notice was properly given under the Federal Tort Claims Act is properly handled under Fed. R. Civ. P. 12(b)(1) rather than as summary judgment under Fed. R. Civ. P. 56). See also Trinity, 848 P.2d at 924 (holding that when a public entity claims that it did not have proper

notice under the CGIA, the issue must be decided as a Rule 12(b)(1) motion for lack of jurisdiction rather than a motion for summary judgment). Therefore, I analyze this issue under the standards applicable to Rule12(b)(1) rather than the Rule 56 summary judgment standards. Pringle v. United States, 208 F.3d 1220, 1222 (10th Cir. 2000).

The CGIA, section 24-10-101 *et seq*., C.R.S., sets forth the circumstances under which a plaintiff may bring an action in tort against the state, its political subdivisions, and its employees. Mesa County Valley School District v. Kelsey, 8 P.3d 1200, 1203 (Colo. 2000). Section 24-10-109(1) requires:

> Any person claiming to have suffered an injury by a public entity or by an employee thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section within one hundred and eighty days after the date of discovery of the injury, regardless of whether the person then knew all the elements of a claim or a cause of action for such injury. Compliance with the provisions of this section shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

The notice must contain the name and address of the claimant; a concise statement of the factual basis of the claim; the name and address of the public employee(s) involved; a concise statement of the nature and extent of the injury; and a statement of the amount of monetary damages being requested. Id. at § 109(2). The notice must be filed with the attorney general if the claim is against the state or an employee of the state. If the claim is against any other public entity or an employee of a public entity, the notice must be filed with the governing body of the entity.

“The GIA's notice requirements are designed to permit a public entity to conduct a prompt investigation of the claim and thereby remedy a dangerous condition, to make adequate

fiscal arrangements to meet any potential liability, and to prepare a defense to the claim." City of Lafayette v. Barrack, 847 P.2d 136, 139 (Colo. 1993) (citations omitted).

The plaintiff has the burden to prove jurisdiction in the face of a challenge under Rule 12(b)(1), Fed. R. Civ. P. Trinity Broadcasting of Denver, Inc., v. City of Westminster, 848 P.2d 916, 925 (Colo. 1993).

Babcock has provided the Affidavit of Stacy Mortenson, an employee of the Office of the Colorado Attorney General. *Motion*, Ex. A. Ms. Mortenson attests that the Office of the Colorado Attorney General has not received an official notice of claim by or on behalf of the plaintiff. Id. at ¶ 4.

The plaintiff does not dispute that he failed to provide a notice of his claims to the Office of the Colorado Attorney General as required by section 24-10-109, C.R.S. He attempts to excuse his failure, arguing that he was unaware of the statutory notice requirement because he was proceeding *pro se*. *Response to Defendant Babcock's Motion to Dismiss or Abstain* [Doc. #97] (the "Response"), pp. 9, 10-11. The notice requirement is not subject to equitable defenses such as waiver, tolling, or estoppel. City and County of Denver v. Crandall, 161 P.3d 627, 633 (Colo. 2007). Therefore, the notice requirement cannot be discharged because of the plaintiff's *pro se* status.

The plaintiff also argues that he provided adequate notice through phone calls to the defendant's office. *Response*, pp. 9-10, 11. However, oral notice does not substitute for the written notice required by section 24-10-109(1). Kelsey, 8 P.3d at 1205.

The plaintiff further argues that he provided adequate notice when he filed a civil action in this Court in November 2007 (which was dismissed for failure to pay the filing fee) and the

defendant "was made aware of this lawsuit in person while Plaintiff was present in the Denver District court on December 17, 2007." *Complaint*, p. 10. The Court's docketing system does not reflect that the plaintiff filed a civil action in November 2007. However, it does show that the plaintiff filed two civil actions on December 28, 2007: 07-cv-02707-ZLW and 07-cv-02708-ZLW. Both actions were dismissed for failure to pay the filing fee. The docket sheet indicates that the actions were dismissed prior to service of the Summons and Complaint. Therefore, neither of the Complaints were served on the named defendants or the Attorney General. Additionally, as noted above, oral notice to Babcock does not satisfy the CGIA's notice requirement.

Moreover, section 24-10-109(6), C.R.S., states: "No action brought pursuant to this article shall be commenced until after the claimant who has filed timely notice pursuant to subsection (1) of this section has received notice from the public entity that the public entity has denied the claim or until after ninety days has passed following the filing of the notice of claim required by this section, whichever occurs first." Although Colorado law does not provide guidance on the issue of whether the filing of a complaint can serve as the notice required by the CGIA, the purpose of the 90 day period between filing the notice and commencing a lawsuit is to give the public entity the "opportunity to evaluate *potential claims* and to determine whether settlement is possible *to avoid a court case*." Regional Transportation District v. Lopez, 916 P.2d 1187, 1194 (Colo. 1996) (emphasis added). To interpret the statute to allow the filing of a complaint to serve as the written notice required by the CGIA would be contrary to the stated purpose of section 24-10-109(6), C.R.S.

Finally, the plaintiff asserts that he "sent a certified letter regarding his lawsuit" to the defendant's supervisor. *Response*, p. 11. The letter is dated February 5, 2009, and is addressed to the Commissioner of the Colorado Division of Securities. Id. at Ex. A. In his letter, the plaintiff refers to this civil action and requests that he be provided with "the proper procedures and/or forms to file an official complaint against Rhea Babcock." He further requests that the agency's website be updated to show that his case "was dismissed with prejudice and that there is an ongoing civil lawsuit regarding your agent and agency." Id.

The plaintiff's certified letter to the Babcock's supervisor cannot serve as a proper notice under the CGIA. The letter was not sent to the Office of the Attorney General, and it does not request monetary damages. Indeed, it was not sent as a condition precedent to filing a lawsuit; it was sent months after this action was filed. Importantly, it was sent almost a year after the plaintiff was released from jail--far exceeding the 180 day deadline to file a proper notice.

"The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit." Crandall, 161 P.3d at 634. The plaintiff has failed to demonstrate that he met the notice requirements as to the claims against Babcock. Therefore, the Motion should be granted to the extent it seeks dismissal of all state law tort claims against Babcock for failure to comply with the notice requirements of the CGIA.

**C. Younger Abstention**

Babcock asserts that, pursuant to Younger v. Harris, 401, U.S. 37, 55 (1971), the Court should either abstain from hearing this case or stay the proceedings pending resolution of the state criminal proceedings. *Motion*, pp. 5-7.

The Tenth Circuit Court of Appeals has explained Younger abstention as follows:

> Under the Younger abstention doctrine, federal courts should not interfere with state court proceedings by granting equitable relief--such as injunctions of important state proceedings or declaratory judgments regarding constitutional issues in those proceedings--when a state forum provides an adequate avenue for relief. Younger abstention is non-discretionary; the district court must abstain once the conditions are met, absent extraordinary circumstances. As [the] court stated in Amanatullah [v. State Bd. Of Medical Examiners, 187 F.3d 1160 (10th Cir. 1999)]:
>
> A federal court must abstain from exercising jurisdiction when: (1) there is an ongoing state criminal, civil, or administrative proceeding, (2) the state court provides an adequate forum to hear the claims raised in the federal complaint, and (3) the state proceedings "involve important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.

Weitzel, 240 F.3d at 875 (internal citations omitted).

The policy underlying Younger abstention is comity--"[t]hat is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." Younger, 401 U.S. at 44. "Central to Younger was the recognition that ours is a system in which 'the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always endeavors to do so in ways that will not unduly interfere with

the legitimate activities of the States.'" Huffman v. Pursue, Ltd., 420 U.S. 592, 601 (1975) (quoting Younger, 401 U.S. at 44).

The Supreme Court has stated that "the relevant considerations of federalism" counsel "heavily toward federal restraint" when relief from an ongoing state judicial proceeding is sought:

> [I]nterference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted as reflecting negatively upon the state courts' ability to enforce constitutional principles.

Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975).

The Younger doctrine applies regardless of whether the plaintiff is seeking injunctive, declaratory, or monetary relief:

> [A]lthough Younger involved a request for injunctive relief against the ongoing state proceeding, such relief need not be explicitly sought in federal court. In an opinion issued concurrently with Younger, the Supreme Court held that "the same equitable principles relevant to the propriety of an injunction [apply] to ... a declaratory judgment.... [W]here an injunction would be impermissible under these principles, declaratory relief should ordinarily be denied as well." Samuels v. Mackell, 401 U.S. 66, 73, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). The Court expressed two reasons for treating declaratory relief essentially the same as injunctive relief. First, even though a party seeks only declaratory relief, once a declaratory judgment is obtained, the party may obtain an injunction to enforce the declaratory judgment. Id. at 72, 91 S.Ct. 764. If, for example, the court's declaratory judgment states that a statute is unconstitutional, the court may then enjoin a prosecution of the federal plaintiff under the statute. Second, a federal-court declaratory judgment would ordinarily have preclusive effect in the state-court proceeding. Id. Once the declaratory judgment is entered, the victorious party could insist in

> state court that the legal proposition declared in federal court cannot be disputed in the state proceeding. Thus, a state-court prosecution of the federal plaintiff may not be able to proceed under a statute declared unconstitutional in the federal-court proceeding.
>
> These same two reasons apply, of course, regardless of the relief initially sought in the federal-court suit. For example, a plaintiff who seeks only monetary damages could, once a money judgment is obtained, seek the additional relief of an injunction and could argue in state court that the federal judgment has preclusive effect. Accordingly, the Younger doctrine extends to federal claims for monetary relief when a judgment for the plaintiff would have preclusive effects on a pending state-court proceeding.

D.L. v. Unified School Dist. No. 497, 392 F.3d 1223, 1228 (10th Cir. 2004).

Babcock asserts, and the plaintiff does not dispute, that on February 28, 2008, the trial court dismissed all of the charges against the plaintiff after determining that his right to a speedy trial had been violated. *Motion*, p. 3. The Denver District Attorney appealed the dismissal of the charges, and the case remains pending in the Colorado Court of Appeals. Id. Thus, the first Younger factor has been met.

The second factor is whether the state court provides an adequate forum to hear the claims raised in the federal complaint. The plaintiff's remaining claims against Babcock are for alleged constitutional violations based on fabricating evidence to establish probable cause for search warrants; fabricating evidence for the purpose of establishing probable cause "to illegally procure evidence and further an investigation through the statutory Denver Grand Jury"; placing spurious liens on the plaintiff's property; "assisting and supervising illegal imprisonment, unconstitutional searches of Plaintiff's residence and office, continued confinement and committing perjury to the grand jury"; conspiring to cause the plaintiff's arrest, prosecution, and

pre-trial detention; conspiring to withhold exculpatory evidence and imprison the plaintiff with fabricated evidence; and misrepresenting material facts to the Denver District Court.

The plaintiff asserts that he "did everything in his power to have a hearing regarding his constitutional rights, to little avail." *Response*, p. 8. The plaintiff further asserts that he "should not have to wait to address the injustices against him on the remote possibility of remand." Id. These conclusory assertions do not demonstrate that the state court does not provide an adequate forum to hear his claims. To the contrary, there appears to be no reason why the plaintiff cannot raise his constitutional concerns if the case is remanded to the trial court for further proceedings.

As to the third factor, "the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." Kelly v. Robinson, 479 U.S. 36, 49 (1986). Thus, all of the Younger factors are met, and the plaintiff's constitutional claims are barred by the Younger abstention doctrine.[2]

Where a plaintiff asserts equitable claims and damage claims which are barred by the Younger abstention doctrine, the district court should dismiss the equitable claims. Meyers v. Garff, 876 F.2d 79, 80-81 (10th Cir. 1989). Where the federal claims for monetary relief would

---

[2]I am aware that the Younger abstention doctrine does not apply "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown." Perez v. Ledesma, 401 U.S. 82, 85 (1971). See also Younger, 401 U.S. at 54 (creating exception on "showing of bad faith, harassment, or any other unusual circumstance that would call for equitable relief"); Phelps v. Hamilton, 122 F.3d 885, 889 (10th Cir.1997). "[I]t is the plaintiff's heavy burden to overcome the bar of Younger abstention by setting forth more than mere allegations of bad faith or harassment." Phelps, 122 F.3d at 889. On the record before me, there is no evidence that any of these exceptions apply.

have a preclusive effect on the pending state proceeding, the court should not dismiss the action altogether. Rather, the court should stay the federal proceedings on the damage claims to preserve the availability of the federal forum for claims which may otherwise run afoul of the relevant statute of limitations.[3] Id.; Deakins v. Monaghan, 484 U.S. 193, 202-203 (1988); D.L. v. Unitifed School Dist. No. 497, 392 F.3d 1223, 1228 (10th Cir. 2004); Parkhurst v. State of Wyoming, 641 F.2d 775, 776-77 (10th Cir. 1981). A finding in this case that Babcock violated the plaintiff's constitutional rights would have a preclusive effect in the state court proceeding. Therefore, the damage claims must be stayed pending finality of the state proceeding.

Accordingly, the Motion should be granted insofar as it seeks dismissal without prejudice of the plaintiff's constitutional claims for equitable relief and a stay of the plaintiff's constitutional claims for monetary damages until the state proceeding is final.

**D. Claims Pursuant to 42 U.S.C. §§ 1985(3) and 1986**

Claim Six alleges that Babcock and the other defendants conspired against him in violation of 42 U.S.C. §§ 1985(3) and 1986. The defendant seeks dismissal of the plaintiff's Sixth Claim for failure to state a claim upon which relief can be granted. *Motion*, pp. 9-11. By separate order I have granted the plaintiff's request to amend his Complaint to assert Claim Six solely under § 1983. Accordingly, the defendant's argument regarding Claim Six is moot.

---

[3]Actions asserted under 42 U.S.C. § 1983 are subject to the general personal injury limitation period of the state in which the action arose. Hunt v. Bennett, 17 F.3d 1263, 1265 (10th Cir. 1994). The appropriate statute of limitation for §1983 actions arising in Colorado is two years. Id. at 1266; Colo.Rev.Stat. § 13-80-102. Federal law rather than state law determines when a cause of action accrues. See Industrial Constructors Corp. v. United States Bureau of Reclamation, 15 F.3d 963, 968 (10th Cir. 1994). "The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." Id. at 969. "A civil rights action accrues when facts that would support a cause of action are or should be apparent." Fratus v. Deland, 49 F.3d 673, 675 (10th Cir. 1995).

**IV. CONCLUSION**

I respectfully RECOMMEND that the Motion be GRANTED as follows:

1. To DISMISS WITH PREJUDICE all state law tort claims against Babcock for failure to comply with the notice requirements of the CGIA;

2. To DISMISS WITH PREJUDICE Claim Ten as to all defendants;

3. To DISMISS WITHOUT PREJUDICE the plaintiff's constitutional claims for equitable relief; and

4. To STAY the plaintiff's constitutional claims for monetary damages until the state proceeding is final.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 12, 2009.

BY THE COURT:

s/ Boyd N. Boland
United States Magistrate Judge