IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-02269-LTB-BNB

DOUGLAS A. GLASER,

    Plaintiff,

v.

THE CITY AND COUNTY OF DENVER, COLORADO,
MITCH MORRISSEY, Denver District Attorney, individually and in his official capacity acting
      under color of law,
JOE MORALES, Deputy District Attorney, individually and in his official capacity acting under
      color of law,
KENNETH LAFF, Assistant District Attorney, individually and in his official capacity acting
      under color of law,
DAVID KARPEL, Assistant District Attorney, individually and in his official capacity acting
      under color of law,
RHEA BABCOCK, Colorado Division of Securities Investigator, individually and in her official
      capacity acting under color of law,
JOE JOYCE, Social Security Administration Agent, individually and in his official capacity
      acting under color of law, .
MATT MCQUEEN, Secret Service Agent, individually and in his official capacity acting  under
      color of law,
ALFREDO YBARRA, Denver Police Detective, individually and in his official capacity acting
      under color of law,
ROBERT ROCK, Denver Police Officer, individually and in his official capacity acting under
      color of law,
MARK DALVIT, Denver Police Officer, individually and in his official capacity acting under
      color of law,
ROBERT FREUND, Denver Police Detective, individually and in his official capacity acting
      under color of law,
KELLY OHU, Denver Police Officer, individually and in his official capacity acting under color
      of law,
SHARON HUGHES, Denver Police Officer, individually and in his official capacity acting
      under color of law,
BRIAN CRAME, Denver Police Officer, individually and in his official capacity acting under
      color of law,
MIKE SCHWARTZ, Denver Police Officer, individually and in his official capacity acting
      under color of law,
MARK BEVERIDGE, Denver Police Officer, individually and in his official capacity acting
      under color of law,

JOSHUA VALERIO, Denver Police Officer, individually and in his official capacity acting under color of law,
TROY EDWARDS, Denver Police Officer, individually and in his official capacity acting under color of law,
CARRIE MAESTAS, Denver Police Officer, individually and in his official capacity acting under color of law,
RUBEN ROJAS, Denver Police Officer, individually and in his official capacity acting under color of law,
DAVID IVERSON, Denver Police Officer, individually and in his official capacity acting under color of law,
ERIK REIDMULLER, Denver Police Officer, individually and in his official capacity acting under color of law,
MATTHEW GRIMSLEY, Denver Police Officer, individually and in his official capacity acting under color of law,
MARK SCHONK, Denver Police Officer, individually and in his official capacity acting under color of law,
MATTHEW CHURCH, Denver Police Officer, individually and in his official capacity acting under color of law,
DAVID SMITH, Denver Police Officer, individually and in his official capacity acting under color of law,
KEVIN FRAZER, Denver Police Officer, individually and in his official capacity acting under color of law,
BRIAN GORDON, Denver Police Officer, individually and in his official capacity acting under color of law,
MICHAEL MARTINEZ, Denver District Court Judge, individually and in his official capacity acting under color of law,
UNKNOWN DENVER DISTRICT COURT CLERK, Denver District Court Clerk, individually and in their official capacity acting under color of law,
RAY WILLIS MANNON, individually and d/b/a Jostee Bail Bonds, LLC, and
UNKNOWN AGENT, Accredited Insurance, individually and in their official capacity as insurance provider for Jostee Bail Bonds, LLC.,

Defendants.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This matter arises on the **Motion to Dismiss** [Doc. #56, filed 1/9/09] (the "Motion") filed

by defendants Mitch Morrissey, Joe Morales, Kenneth Laff, and David Karpel (the

"defendants").  I respectfully RECOMMEND that the Motion be GRANTED and that the Complaint be dismissed as to these defendants.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972).  Nevertheless, I cannot act as advocate for a *pro se* litigant, who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.  Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss, the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, I may treat the motion as a Rule 56 summary judgment motion when matters outside the pleadings are presented to and not excluded by me, and all parties have been given a reasonable opportunity to respond as provided in Rule 56.  Fed.R.Civ.P. 12(d).  The defendants attach to their Motion the affidavit of defendant Morales.  Because I have not considered the affidavit in my analysis of the Motion to Dismiss, I do not convert the motion to one for summary judgment.  Fed.R.Civ.P. 12(d).

## II.  BACKGROUND

The plaintiff filed his Complaint on October 20, 2008.  He asserts 10 claims against 33 defendants.  The plaintiff describes the background facts of his case as follows:

1.  The plaintiff was the victim of a hit and run traffic accident on February 20, 2005.  The responding Denver police officer stated that the plaintiff presented him with a United States passport in the name of Michael Douglas Glaser.  The officer further stated that when he entered the name in his computer, he did not receive a return on his query.  He then entered the plaintiff's license plate number.  Later that night, the plaintiff's residence was raided by approximately 15 Denver police officers.  *Complaint*, p. 12, first full paragraph.

2.  On February 24, 2005, the plaintiff's office was raided by various government agents.  The agents had a search warrant for the fictitious passport.  Id. at second full paragraph.

3.  On September 1, 2005, the plaintiff was arrested pursuant to a 43 count indictment and held in the Denver County Jail under a $750,000 bond.  The plaintiff posted the required bond and was released from custody on October 16, 2005.  At his next scheduled court appearance on October 29, 2005, the plaintiff was remanded back into custody until he surrendered the fictitious passport.  Id. at third full paragraph.

4.  The Denver District Court placed liens on the plaintiff's property, which clouded title and blocked the sale of his residence so that he could not utilize his equity to secure private counsel.  Id. at fourth full paragraph.

5.  The plaintiff was held in the Denver County Jail for 905 days before his case was dismissed by the Denver District Court.  Id. at fifth full paragraph.

6. While the plaintiff was in jail, he lost all of his assets and was denied bail. Id. at sixth full paragraph.

7. The government agents fabricated evidence and misstated material facts to judges in order to secure search warrants and imprison the plaintiff. All of the defendants acted in concert to deprive the plaintiff of his constitutional rights. Id. at seventh full paragraph.

The plaintiff seeks declaratory and injunctive relief; nominal damages; compensatory damages in the amount of $119,638,135.00; punitive damages; a formal apology; vacation of an earlier state conviction; costs and attorneys' fees; and appointment of a special prosecutor to investigate all of the defendants. Id. at pp. 58-59.

### III. ANALYSIS

#### A. Absolute Prosecutorial Immunity

At all times pertinent to the allegations of the Complaint, defendant Mitch Morrissey was the Denver District Attorney; defendant Joe Morales was the Deputy District Attorney; and defendants Kenneth Laff and David Karpel were Assistant District Attorneys. Id. at p. 1. The defendants assert that they are entitled to absolute prosecutorial immunity.

It is axiomatic that a prosecutor enjoys absolute immunity from a civil suit for damages for actions taken "in initiating a prosecution and in presenting the State's case." Imbler v. Pachtman, 424 U.S. 409, 427 (1976). The question of whether a prosecutor's actions are absolutely immune depends on the nature of the function performed by the prosecutor at the time of the alleged misconduct. Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993). Actions taken as an advocate enjoy absolute immunity, id. at 272, whereas "[a] prosecutor's administrative duties

and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Id. at 273.

"[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity." Id. "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made," id., and can "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom." Id. at 272 (internal quotations omitted). In addition, absolute immunity is extended to a prosecutor's "appearance in court to support an application for a search warrant and the presentation of evidence at that hearing." Burns v. Reed, 500 U.S. 478, 492 (1991). Absolute immunity is also extended to a prosecutor's "knowing use of false [evidence] before the grand jury and at trial," Id. at 485. Moreover, advocacy functions include a prosecutor's actions in "filing charges, procuring an arrest warrant, and seeking a particular bail amount." Lerwill v. Joslin, 712 F.2d 435, 437-38 (10th Cir. 1983). "[S]ince a prosecutor's immunity is absolute, it applies no matter how obvious it is to the prosecutor that he is acting unconstitutionally and thus beyond his authority." Id. at 438.

Claims Two, Three, Five, Six, Seven, Eight, Nine, and Ten[1] are asserted against the defendants. The allegations of Claim Two (and most of the other claims) are vague and conclusory as against the defendants. Construing Claim Two liberally, accepting all well-

---

[1] In a separate recommendation, I have recommended that Claim Ten be dismissed as to all defendants because the federal criminal statutes do not provide for private civil causes of action. I do not address Claim Ten here.

pleaded allegations as true, and construing all reasonable inferences in favor of the plaintiff--as I must--Claim Two alleges that on February 20, 2005 (the date the plaintiff was involved in the car accident and the date his residence was raided), Laff and Karpel knowingly used fabricated evidence (Officer Dalvit's statement that the plaintiff presented a fictitious passport) for the purpose of obtaining a warrant to search the plaintiff's home; and they knowingly used the fabricated evidence on September 28, 2005, through September 10, 2007, for the purposes of conducting an investigation via the grand jury and securing the plaintiff's detention in jail. Claim Two further alleges that Laff and Karpel "misrepresented the facts to a Denver District Court regarding the existence and ongoing investigation of the fabricated evidence"; and "knowingly used false testimony and statements regarding fictitious foreign accounts to persuade the Denver District Court to further confine Plaintiff." *Complaint*, p. 22. Finally, Claim Two alleges that defendants Morrissey and Morales supervised and approved the plaintiff's arrest on an unconstitutional condition of bond. Id. at pp. 21-22.

In Claim Three, the plaintiff alleges that the defendants deprived him of his constitutional right to a speedy trial. Id. at pp. 25-26. Claim Five alleges that the defendants supervised and condoned the arrest of the plaintiff without probable cause[2] and with fabricated evidence and perjured testimony. Id. at p. 31.

Claim Six alleges that the defendants acted in concert with the other defendants to cause the plaintiff's arrest, prosecution, and pre-trial detention without probable cause to believe the

---

[2]I note that the plaintiff alleges that he was arrested pursuant to a grand jury indictment. *Complaint*, third full paragraph. "[A]n indictment is the culmination of the probable cause screening process of the grand jury and that procedure functions as a constitutionally adequate substitute for a preliminary hearing." People v. District Court for Second Judical Dist., 610 P.2d 490, 401 (Colo. 1980).

plaintiff was guilty of any crime.  Further, the defendants conspired to imprison the plaintiff with fabricated evidence; they withheld exculpatory evidence; and they misstated material facts to the grand jury and to the Denver District Court.  Id. at pp. 37-38.

Claim Eight alleges that the defendants illegally imprisoned the plaintiff and attempted to prosecute him with fabricated evidence and perjured testimony.  Id. at  p. 49.  In Claim Nine, the plaintiff alleges that the defendants supervised and approved prosecution of charges that were previously dismissed in a plea agreement.  Id. at pp. 55-56.[3]

Alvarado provides that "courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief."  493 F.3d at 1215 n.2.  "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated."  Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).  Claims Two, Three, Five, Six, Eight, and Nine do not contain specific allegations sufficient to establish that they plausibly support a claim for any administrative and/or investigative functions by the defendants.

Citing Buckley, the plaintiff argues that the defendants' conduct "occurred well before they could claim to be working as advocates" because they utilized fabricated evidence to secure search warrants, and they used the grand jury to conduct further investigation, all prior to the

---

[3]To the extent the plaintiff attempts to bring other claims, they are unintelligible and will not be recognized.  See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").  Moreover, to the extent the plaintiff's Response attempts to assert additional claims and allegations against the defendants, I will not address claims and allegations raised for the first time in a brief opposing a dispositive motion.

existence of probable cause to arrest him. *Response to Defendant Morrissey, Morales, Laff, and Karpel's Motion to Dismiss* [Doc. #98] (the "Response"), p. 6. The facts of <u>Buckley</u> are inapposite to the facts of this case. In <u>Buckley</u>,

> [t]he fabricated evidence related to a bootprint on the door of the Nicarico home apparently left by the killer when he kicked in the door. After three separate studies by experts from the Du Page County Crime Lab, the Illinois Department of Law Enforcement, and the Kansas Bureau of Identification, all of whom were unable to make a reliable connection between the print and a pair of boots that petitioner had voluntarily supplied, [the prosecutors] obtained a "positive identification" from one Louise Robbins, an anthropologist in North Carolina who was allegedly well known for her willingness to fabricate unreliable expert testimony. Her opinion was obtained during the early stages of the investigation, which was being conducted under the joint supervision and direction of the sheriff and respondent Fitzsimmons, whose police officers and assistant prosecutors were performing essentially the same investigatory functions.

<u>Buckley</u>, 509 U.S. at 262.

Unlike the prosecutors in <u>Buckley</u>, the defendants in this case are alleged to have violated the plaintiff's rights in connection with (1) obtaining a search warrant; (2) conducting grand jury proceedings; (3) the arrest following indictment; (4) the bond proceedings; and (4) the prosecution. Each of these functions is an advocacy function; they are not administrative or investigatory. Accordingly, the Motion should be granted insofar as it seeks dismissal of Claims Two, Three, Five, Six, Eight, and Nine as asserted against defendants Mitch Morrissey, Joe Morales, Kenneth Laff, and David Karpel.

In Claim Seven, the plaintiff alleges that the defendants utilized the local media and the District Attorney's web site to defame his character. *Complaint*, pp. 46-47. "[S]tatements to the media are not entitled to absolute immunity." <u>Buckley</u>, 509 U.S. at 277. "Comments to the

media have no functional tie to the judicial process just because they are made by a prosecutor." Id. at 278.  Consequently, the Motion should be denied insofar as it seeks dismissal of Claim Seven on the basis of prosecutorial immunity.

## B.   Colorado Governmental Immunity Act

The defendants assert that the plaintiff's state law claims must be dismissed because they are barred by applicable provisions of the Colorado Governmental Immunity Act (the "CGIA"). *Motion*, pp. 3-4.  I have recommended dismissal of all of the state law claims except Claim Seven on the basis of prosecutorial immunity.  Claim Seven alleges that the defendants utilized the local media and the District Attorney's web site to defame his character.  *Complaint*, pp. 46-47.

The CGIA provides, with exceptions that are not applicable here, that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant . . . ." Section 24-10-106(1), C.R.S.  The CGIA provides an exception to immunity where the act or omission causing injury was willful and wanton.  Id. at § 118(1).

The defendants assert that the plaintiff's allegations do not meet the willful and wanton exception.  *Motion*, p. 4.  Section 110(5)(a) of the CGIA requires that "[i]n any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegation shall be stated in the complaint."  Further, "[f]ailure to plead the factual basis of an allegation that an act or omission of a public employee was willful and wanton shall result in dismissal of the claim for failure to state a claim upon which relief can be granted."  24-10-110(5)(b), C.R.S.

The CGIA does not define "willful and wanton." However, the Colorado Supreme Court has been guided by the use of the term elsewhere in Colorado law. Moody v. Ungerer, 885 P.2d 200, 205 (Colo. 1994). In Moody, the Colorado court looked for allegations of "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff" and conduct that was "wholly disregardful of the rights, feelings and safety of others ... at times even imply[ing] an element of evil." Id.

As with the plaintiff's other claims against the defendants, the allegations of Claim Seven are vague and conclusory. The only specific allegations against defendants Mitch Morrissey, Joe Morales, Kenneth Laff, and David Karpel are that they:

> utilized the local media and the www.denverda.org website to defame Plaintiff's character and slander his name. This information had been passed on to local newspapers, radio, and TV stations. The accusations contained therein were under false pretenses and the result of fabricated evidence and perjured testimony for purposes of securing indictment against Plaintiff.

*Complaint*, pp. 46-47.

The plaintiff does not describe the information which was allegedly published, nor does he allege any specific facts to show that the defendants' publication of the information "secured" a grand jury indictment against him. The plaintiff has failed to plead a specific factual basis to support his allegations of willful and wanton conduct as required by section 24-10-110(5), C.R.S. The Motion be should be granted insofar as it seeks dismissal of Claim Seven.

## IV. CONCLUSION

For the reasons stated, I respectfully RECOMMEND that the Motion be GRANTED and that the Complaint be DISMISSED as to defendants Mitch Morrissey, Joe Morales, Kenneth Laff, and David Karpel.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed.R.Civ.P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated June 12, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge